**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DARRELL DUNHAM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **JACKSON COUNTY, LARRY** ) | |
| **REINHARDT, ILLINOIS STATE BAORD** ) | |
| **OF ELECTIONS, BRYAN A.** ) | **CIVIL NO. 13-473-GPM** |
| **SCHNEIDER, WILLIAM M.** ) | |
| **MCGUFFAGE, JESSE R. SMART,** ) | |
| **BETTY J. COFFRIN, HAROLD D.** ) | |
| **BYERS, JUDITH C. RICE, CHARLES W.** ) | |
| **SCHOLZ, ERNEST L. GOWEN, and** ) | |
| **RUPERT BORGSMILLER,** ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This case was brought to challenge the reapportionment plan adopted by the Jackson County Board on July 13, 2011, which redrew the district lines in Jackson County, Illinois for the election of County Board members.  Plaintiff, Darrell Dunham, is an attorney who ran as a Republican for a seat on the County Board in the election following the adoption of the 2011 reapportionment plan.  He lost.  He now claims that he lost because the 2011 reapportionment plan was the result of illegal gerrymandering.

Mr. Dunham filed this lawsuit for declaratory and injunctive relief against Jackson County and its clerk, Larry Reinhardt, as well as the Illinois State Board of Elections, and nine individual

Board members in their official capacities.[1]  The Board of Elections and its members, filed a motion to dismiss (Docs. 17, 18), as did Jackson County and Larry Reinhardt (Doc. 19).  The Court set the motions to dismiss for hearing, however, Mr. Dunham requested a continuance. Due to uncertainty regarding the parties' availability, as well as the Court's, and in the interest of moving this case along, the Court found it prudent to address the motions to dismiss without rescheduling the hearing.  For the following reasons, the motions to dismiss are granted in part and denied in part.

## DISCUSSION

In reviewing a motion to dismiss, the Court takes as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Id.*, *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  Plausibility in this context means that "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together."  *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).  A complaint cannot simply recite the elements of the cause of action, or couch legal conclusions as factual allegations. *Iqbal,* 556 U.S. at 678, *citing Twombly,* 550 U.S. at 555.  Rather, the plaintiff must "provid[e] some specific facts" to support the legal claims asserted in the complaint.  *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

---

[1]  Donald Barrett, Daniel Bost, and Andy Wist were also named as Plaintiffs in the complaint; however, their subsequent request to be dismissed as parties to the suit has been granted (Docs. 17, 23).

The Court will address Mr. Dunham's purported federal claims in counts 1 and 3 which are the basis for subject matter jurisdiction in this action, because in the absence of a federal claim, the Court is barred from retaining supplemental jurisdiction over the state law claim in count 2. *Voinovich v. Quilter,* 507 U.S. 146, 156 (1993).

As an initial matter, the Court notes that there is no discernible difference between counts 1 and 3.  Both counts are brought against all Defendants, contain the same legal theories and operative facts, and seek the same relief.   Therefore, count 1 is duplicative of count 3.

Not only are count 1 and count 3 legally indistinguishable, but they both fail to state a claim upon which relief can be granted.  Mr. Dunham claims that the 2011 reapportionment plan constitutes an illegal gerrymander in violation of U.S. Constitution.  Gerrymandering involves drawing district boundaries in an effort to give a particular set of the electorate—be it racial, ethnic, religious, economic, or political—an advantage at the polls by diluting the opposition's voting strength.   In his complaint, Mr. Dunham alludes to two types of gerrymandering—political and racial.  Specifically, Mr. Dunham claims that "certain Democratic members of the County Board and other Democratic hopefuls conspired to . . . prevent the black citizens of Jackson County from acquiring representation on the Jackson County Board with the further intent of denying Republican voters in Jackson County a fair chance to influence the political process" (Doc. 2, p. 9).

Most striking, and puzzling, to the Court, is the underlying premise of the complaint: had the Democrats not plotted to dilute the voting power of blacks—a set of the electorate that historically   identifies   with   the   Democratic   Party [2] ,   then   Dunham—a   caucasian   and   a

---

[2]  *See* Sylvia R. Lazos Vargas, *Does A Diverse Judiciary Attain A Rule of Law That Is Inclusive?: What Grutter v. Bollinger Has to Say About Diversity on the Bench*, 10 Mich. J. Race & L. 101, 123 (2004), *citing* DAVID A. BOSITIS, JOINT CTR. FOR POLITICAL AND ECON. STUDIES, 2004

Republican—would have been elected.  These allegations are truly puzzling, and the complaint adds no facts that would make them plausible.  For example, Mr. Dunham does not identify the district(s) that are illegally gerrymandered; nor does he identify the district in which he is registered to vote, or the district he sought to represent.  He does not allege the racial or political composition of voters in Jackson County; how the district(s) were purportedly gerrymandered; or how many people were affected and what their race and/or political affiliation are.  And he does not allege the results of the election, other than to state that he and Dan Barrett lost their bids for election.

It is also difficult to tell what claims Mr. Dunham is attempting to bring.  His complaint consists of a welter of claims chock full of legal jargon roughly aimed at every entity and individual who may have had anything to do with his losing candidacy.  As best the Court can discern, Mr. Dunham is seeking to advance three claims against all Defendants—an equal protection claim for political gerrymandering, and equal protection claim for racial gerrymandering, and a due process claim.  However, his superficial mention of these constitutional provisions coupled with his generalized criticisms of the reapportionment plan fail to provide a sufficient basis to suggest that he has stated a plausible entitlement to relief.

Mr. Dunham will be given leave to file an amended complaint setting forth factual allegations that would make any of the federal claims plausible as to any of the Defendants.  However, the Court first wishes to note the following deficiencies in the complaint which are

---

NATIONAL OPINION POLL: POLITICS AND THE NATIONAL ELECTION (finding in 2004 that 63% of black respondents claimed to be Democrats, down from 74% in 2000).  *See also* Guy-Uriel E. Charles, *Racial Identity, Electoral Structures, and the First Amendment Right of Association*, 91 CAL. L. REV. 1209, 1234–35 (2003) (citing numerous researchers who have found that blacks are more likely than whites to identify with the Democratic Party).

based on the Defendants' motions to dismiss and the Court's own observations:

**1. No facts showing why the State Board of Elections is subject to suit.** The Eleventh Amendment prohibits federal courts from entertaining suits by a citizen against a state or its agencies unless the state consents to the suit or Congress uses its powers under the Fourteenth Amendment to abrogate the state's Eleventh Amendment immunity. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The Illinois State Board of Elections is a state agency, and there is no allegation in the complaint, nor any evidence to show, that Illinois has consented to this suit or that Congress has abrogated its immunity.

**2. No facts sufficient to implicate the members of the Board of Elections or Larry Reinhardt.** The complaint is devoid of any factual content that allows the Court to infer that Larry Reinhardt or the members of the Board of Elections bear any responsibility for the purported violation of Mr. Dunham's constitutional rights.

With respect to Larry Reinhardt, there are no allegations as to how he caused or participated in the constitutional violation. Instead, it appears that Mr. Reinhardt was named as a defendant merely because of his position, not because of any alleged personal responsibility. *Contra Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault[.]")

As for the members of the Board of Elections, the complaint alleges only that they have a general obligation to administer and supervise elections. The members did not develop or vote on the reapportionment plan for Jackson County. And there are no allegations that the members are responsible for reviewing reapportionment plans adopted by county boards, that they have the power to challenge reapportionment plans, or that they have the power to enforce apportionment

statutes.   Therefore, the Court cannot infer that the members' general obligation to administer and supervise elections translates into an obligation with respect to county redistricting.

**3.  No standard for evaluating political gerrymandering claim.**   Mr. Dunham did not offer a reliable standard by which to adjudicate his political gerrymandering claim. *Baldus v. Members of Wisconsin Gov't Accountability Bd.*, 849 F.Supp.2d 840, 854 (E.D. Wis. 2012) (dismissing political gerrymandering claim upon finding that plaintiffs failed to articulate a workable standard by which to assess that claim); *Comm. for a Fair & Balanced Map v. Ill. Bd. of Elections*, Case No. 11-cv-5065, 2011 WL 5185567, at *9 (N.D. Ill. Nov. 1, 2011) (same); *Radogno v. Ill. State Bd. of Elections*, Case No. 11-CV-04884, 2011 WL 5025251, at *6 (N.D. Ill. Oct. 21, 2011) ("*Radogno I*") (same).

Moreover, given that the Supreme Court has failed in its last two attempts to articulate such a standard, it seems highly unlikely, if not impossible, that Mr. Dunham will be able to do so.  *See League of United Latin American Citizens (LULAC) v. Perry*, 548 U.S. 399, 420 (2006) (holding that plaintiffs' claims must be dismissed because of "the absence of any workable test for judging partisan gerrymanders"); *Vieth v. Jubelirer*, 541 U.S. 267, 313 (2004) ("[N]o judicially discernible and manageable standards for adjudicating political gerrymandering claims have emerged.")  *See also Radogno v. Ill. State Bd. of Elections*, 11-CV-04884, 2011 WL 586822, at *2 (N.D. Ill. Nov. 22, 2011) ("*Radogno II*") (attempting to articulate a workable standard is a "Sisyphean task"); *Radogno I*, 2011 WL 5025251 at *6 (attempting to articulate a workable standard is "an exercise in futility").

**4.  No facts sufficient to state a plausible political gerrymandering claim.**   In support of the political gerrymandering claim, Mr. Dunham merely set forth legal conclusions couched as

factual allegations.   For example, he alleged that the Jackson County Board acted intentionally and in bad-faith to disadvantage Republican voters and dilute Republican representation on the Board.   He further alleged that the districts were not as contiguous or compact as possible, and cities, precincts, and townships were divided, all in violation of Illinois law.   These bare allegations amount to nothing more than a "formulaic recitation of the elements" of a claim for political gerrymandering.   *Iqbal*, 556 U.S. at 681, *citing Twombley*, 550 U.S. at 555.   As such, these allegations are not entitled to be assumed true.   Once the bare legal conclusions are disregarded, there are no other factual details from which the Court can plausibly infer that the reapportionment plan constitutes a political gerrymander.

   **5.   No standing to bring racial gerrymandering claim.**   The first and most important thing to note about Mr. Dunham's purported racial gerrymandering claim is that he did not adequately allege he has standing to bring such a claim.   He did not identify the district in which he is registered to vote, or the district he sought to represent; nor did he allege that he was assigned to a district as a direct result of having personally been subjected to a racial classification *See Sinkfield v. Kelley,* 531 U.S. 28, 30 (2000) (per curiam); *United States v. Hays,* 515 U.S. 737, 739 (1995).

   **6.   No facts sufficient to state a plausible racial gerrymandering claim.**   Mr. Dunham also did not allege facts sufficient to state an equal protection claim for racial gerrymandering. *Shaw v. Reno*, 509 U.S. 630, 649 (1993); *Comm. for a Fair & Balanced Map*, 2011 WL 5185567 at *8; *Radogno I*, 2011 WL 5025251 at *9; *Polish Am. Cong. v. City of Chicago*, 211 F. Supp. 2d 1098, 1104 (N.D. Ill. 2002).   He alleged that partisanship, not race, was the predominant factor behind the 2011 reapportionment plan—the complaint specifically states that the reapportionment

plan was constructed "for the purpose of obtaining a *partisan* political advantage for the Democratic Party of Jackson County, Illinois" (Doc. 2, p. 5) (emphasis added).

**7.   No facts sufficient to state a plausible due process claim.**   Mr. Dunham's mere allegation that the 2011 reapportionment plan violated his right to due process (Doc. 2, pp. 1, 9) is nothing more than an unadorned accusation lacking a factual basis to make the claim plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In light of the above, the Court finds that Mr. Dunham has failed to state a federal claim upon which relief can be granted against any Defendant.   While the foregoing analysis does not mean that Mr. Dunham has failed to articulate a state law claim based on the 2011 reapportionment plan, the Court nevertheless declines to entertain the remaining state law claims in Count 2.   28 U.S.C. § 1367(c)(3).

<u>CONCLUSION</u>

For the foregoing reasons, the motion to dismiss filed by Defendants Illinois Board of Elections and its members (Doc. 17), and the motion to dismiss filed by Jackson County and Larry Reinhardt (Doc. 19) are **GRANTED IN PART and DENIED IN PART**.   As there is no viable federal claim, the Court declines to exercise supplemental jurisdiction over the state law claims Count 2.   The complaint is **DISMISSED** without prejudice and with leave to amend.

Plaintiff Darrell Dunham has thirty days to file an amended complaint.   If he does not do so, the dismissal of the complaint will automatically convert to a dismissal with prejudice.

**IT IS SO ORDERED.**

DATED:   November 18, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge